United States v. Holland, and Mr. Milling, when you're ready, we'll hear from you. Thank you, Your Honor. May it please the Court, my name is Jonathan Milling, and I represent the appellant in this case, Allen Holland, challenging his sentence of 51 months on a supervised release violation. Your Honors, the district court, Judge Childs, determined that criminal domestic violence in the second degree in South Carolina is a grade A violation. And based upon that, determined that 51 to 63 months was the appropriate sentence. If, in fact, she had determined that it was not, in fact, a grade A violation, because it was not a crime of violence as looking at it under the categorical approach, then it would have been a grade B violation, which would have dramatically reduced his effective range from 51 to 63 months to 21 to 27 months, cutting it more than in half. If we look at criminal domestic violence in the second degree under South Carolina law, it provides that it is unlawful to cause physical harm or injury to a person's household member, or to offer or to attempt to cause physical harm or injury to a person's household member with the apparent presentability under the circumstances reasonably creating fear or imminent peril. Now, this Court has not had an occasion to address whether or not CDV second under South Carolina law is categorically violent. So, we must look... If we haven't, aren't there three unpublished opinions? There are cases that have addressed CDV hand, and in looking at those cases, the courts have addressed whether or not, in those unpublished opinions, CDV or criminal domestic violence in its basis form or its most elementary form was, in fact. These cases seem to focus on the second prong of the test or the second way that an offender can violate it, whether or not the offer or the attempt. Let me just, to make sure I'm remembering the posture right, we're on plain error review, right? Yes, Your Honor. So, it's going to have to be sort of a blindingly obvious error to consider that this is categorically a crime of violence, and in light of three unpublished opinions, and I know they're unpublished, but they're fully reasoned, saying that it is, in fact, categorically a crime of violence. How do we get to plain error? I think if we look, instead of focusing on those three cases, we look at the published opinions of Torres-Miguel and also the recent case of Middleton, which I think Your Honor actually participated in, which look at, instead of just focusing, looking at the statute and determine whether or not the crime prohibited criminalizes the cause or the effect, and in this case, if we look at the first provision under 162520, the CDV statute, to cause physical harm or injury to a person's household member. Now, that is the causal or the effect of something, something that must have happened between family members, and if we look at how that could be done, there's any number of ways, and Torres-Miguel plainly said, if the statute itself focuses on the result, the injury, it's not enough without some sort of forcible conduct giving rise to it. The same rationale applied in the Middleton case, where this court found that South Carolina's version of involuntary manslaughter was not categorically violent because the focus of the statute was not the force required, but rather it was instead the result, the resulting death that occurred. But in the context of revocation, why aren't we looking at the defendant's actual conduct? If we, and 7B1.1 does prescribe that we look at the conduct. What the defendant did rather than the elements of the crime, correct? Well, I think that we've got to look at both, because there's also reference in the commentary under 4B, that you look at 4B1.2 to determine what a crime of violence is. And I think this court's decisions in Reed, and there's another case that addresses using the categorical approach in a revocation scenario. If we look at what the conduct is, what did a defendant even do? It allows the court, the district court, to be able to revoke a sentence without the need for an indictment, without the need for an actual conviction. Right, the court does that all the time at a regular sentencing. The court's allowed to consider conduct that hasn't even been charged, hasn't been convicted. Absolutely. So, why are we now engaging in the academic exercise of categorical approach when the court knows or has a factual basis for what the defendant did in this case? Because I think that the court has to determine whether or not the factual conduct engaged in, that the court determines that the defendant engaged in, falls under either a federal or a state crime. And then you look at that federal or state crime to determine whether or not it is a crime of violence. I think that's the way that we can read both 7B1.1, which requires that we look at the conduct of the defendant, but also looking at the commentary and the application notes requiring us to look back at 4B1.2 and the definition. You agreed that you're arguing against the weight of authority in the other circuits, the 2nd, 3rd, 7th circuits all say it's the actual conduct. Well, I think that this court in United States v. Reed has held, and it's an unpublished opinion, to look at the categorical approach in evaluating whether or not McMillan. But we don't have any authority that says you have to, do we? We don't have any authority in the 4th Circuit that requires it. Reed and McMillan vote. Why isn't it more logical to look at what somebody did? Because you're looking at, the Supreme Court has said, we have said that the revocation raises an issue of a violation of the trust that the court places in the defendant. Absolutely. And so, why isn't it more logical to look at the actual conduct rather than to start engaging in this much more remote concept of what constitutes or may constitute a crime of violence generally with regard to this offense? I think that we have to look at both. I think that certainly the court under 7B1.1 requires us to look at what a defendant actually did. And it doesn't require conviction. It doesn't even require indictment at that stage. But if you look at what somebody did and evaluate whether or not what they did rises to the level of a crime of violence based upon how a state has interpreted the alleged offense, then it allows a protection. And because otherwise, we've got situations where, such as this, a defendant may go to court on a revocation and then the state court case is actually dismissed. In South Carolina, criminal domestic violence, a charge can be brought on a uniform traffic ticket. It doesn't have to go to a magistrate judge to make a probable cause determination. It is determined based upon law enforcement on the side of the road and evaluating the facts as he or she may see it at that particular point in time. And so, when you're looking at situations where somebody can be arrested without a probable cause determination, it's very important to determine looking at how that state has evaluated and analyzed those cases as to whether or not it is, in fact, a crime of violence, whether or not the appropriate level of force. Because otherwise, if there is no force required in the statute itself, that's when we drop back to it being a Category B violation. Because the maximum possible punishment is in excess of one year. I think it's an interesting question whether you need to go to a categorical approach. I mean, the categorical approach, one of the difficulties is you have to look at the ordinary offense. You have to imagine some offense. And as Judge Keenan says, in this case, we don't have to do that. We have the actual offense before us so we can look at the facts of that. But let's set that aside. In the Castleman case, the Supreme Court was addressing domestic violence. Yes, sir. This is the use of a gun in connection with a misdemeanor crime of domestic violence. And the court said domestic violence is not merely a type of violence. It is a term of art encompassing acts that one might not characterize as violent in the non-domestic context. And it goes on to explain that in the domestic violence area, you have the accumulation of events and you have the power relationship between the husband and wife and so forth. And so that categorically, domestic violence is different from violence under the normal analysis. Would that enlighten this at all? Especially in view of the fact that we're under plain error and we also have the unpublished opinions? Well, and I respect Castleman, obviously. In this court, in Torres-Miguel, in subsequent... Castleman came after Torres and Castleman happens to be from the Supreme Court. Yes, sir. And I think Middleton clarified that the abrogation in Castleman did not eliminate portions of the Torres-Miguel case. Specifically, that portion which provides... But that wasn't a domestic violence case, right? I think Judge Niemeyer is asking you something different about Castleman's connection to domestic violence offenses and how we should view that. I don't see that Middleton has any bearing on that. Well, and I think if we look at the domestic violence situation and if we look at the practical realities in state courts where these types of charges often arise, the situations can be very volatile. And law enforcement is called upon to determine which of the two aggressors, sometimes both, may actually be the one who gets arrested in that case. Obviously, there are situations where an individual may be the only aggressor and the victim may have played no role whatsoever. But here we have the defendant convicted of domestic violence, right? He wasn't convicted. The charges were actually dismissed after this offense. But Judge Childs, in evaluating the evidence of the case... He was charged, not she. He was charged, not she. She came forward as... The Supreme Court recognized that it said, indeed, most physical assaults committed against women and men by intimates are relatively minor and consist of pushing, grabbing, shoving, slapping, and hitting. And then it goes on to explain why even these minor physical aspects are violent in the domestic relations context. And so that it said, while they may not satisfy the general definitions of violence as used in Johnson and all these other cases, domestic violence is what they call a term of art. Yes, Your Honor. I think certainly it's a term of art. I think certainly the situation is different. But I would just, as I've argued in the brief, urge the Court to evaluate whether or not, in South Carolina's version, this particular statute criminalizes the resulting injuries or criminalizes the use of force and whether or not it is the use of force which is actually sufficient to give rise to a crime of violence under the approach. Beyond that, Your Honors, if we look at the actual sentencing and the justification that the Court provides, Judge Childs does not address or evaluate or discuss the 3553A factors in evaluating and determining whether or not he should be sentenced to the 51 months, 63 months, or something below that, something outside of the guideline. She said that it was a general statement, but I thought she concluded by saying, I've considered all the sentencing factors, didn't she, at the end of her? My recollection is that she addressed that my client needs some sort of help with substance abuse, that he needs anger management based upon the conduct and the facts that she found at the hearing. And based upon that, she's going to sentence him to a term of imprisonment of 51 months. I say that I'm out of time. Thank you, Your Honors. Okay, thank you. Mr. McMillan, Million. May it please the Court, Everett McMillan on behalf of the United States of America. Your Honors, the District Court cannot commit plain error in this case because the District Court followed this Court's opinion in the Chisholm decision in determining that South Carolina criminal domestic violence second was indeed a crime of violence in the revocation context. Your Honor, the opinion in Chisholm was, of course, later affirmed by the opinions in Lewis and Young. And despite the fact that those are unpublished opinions, there's no opinion to the contrary. Under those facts, it cannot be error, especially in light of the fact there was no objection during the revocation hearing. It cannot be error for the District Court to conclude that the criminal domestic violence that was before her was indeed a violent offense and therefore should be characterized as a Grade A violation. Your Honor, in addition to that, the fact is that the revocation context is different than the sentencing context. That's why the conduct does matter in the revocation context because the conduct is before the revoking court, whereas it would not be before a sentencing court where the categorical approach may apply. Additionally, domestic violence is different. South Carolina case law recognizes that. Under South Carolina case law that was cited in our brief, it incorporates a different type of violence than, say, a simple assault or that nature of crime. That was recognized in the Castleman case. Because of that, it just further bolsters the judge's decision that it was appropriate in this case to find that the defendant's conduct constituted a Grade A offense. Your Honor, in addition to that, just to address the second point that was raised, the District Court adequately considered all of the relevant 3553A factors, and that's made apparent by her decision. I believe on pages about 75 through 79 of the joint appendix, there's a description by the judge of everything that she heard during the hearing. She heard, of course, the facts of the criminal domestic violence second that was committed. She heard all the facts of another instance of domestic violence third degree that was committed. And she pointed out various factors related to the defendant, such as the fact that he had a criminal history category of six, which in and of itself says a lot about the defendant. She correctly identified the guideline range, the statutory maximum, noted that she had considered all of the relevant factors, and all of this in reaching a sentence that was within the guidelines and within or under the statutory maximum. Your Honor, I just believe that in the absence of any authority to the contrary, that it's clear in this case that on a plain error review, as there were absolutely no objections raised to either the grade or the sentence at the revocation hearing, that the defense simply can't prevail against that standard of review. I'm glad to answer any questions the panel has. Thank you, Mr. Millian. Mr. Millian? Thank you, Your Honors. May it please the Court. While I recognize that the councilman identifies domestic violence situations as being different, I would respectfully submit that we still have to go through an analysis to determine whether or not South Carolina's version of this statute is categorically similar to what Castleman envisions, or whether or not it should be interpreted differently, whether or not the focus on the causation of injury is sufficient, or whether or not it is categorically violent. If we look at State v. Leopard, which is one of the cases that I cited in the brief, it's a situation, and while the focus of the brief and the challenge there is whether or not an adult stepdaughter is protected under South Carolina's criminal domestic violence statute, whether or not she is protected, the facts in that case are such that the husband and wife, her mother, and her stepfather were arguing, she interjected herself, and the only offensive touching, the only force that has been described, was that he pushed her. We have no indication, no description, of anything as to exactly what the harm was. And pushing is not going to be forcible conduct. It's not going to be sufficient. There's going to have some force, but whether or not it is that violent force, as Johnson defines, sufficient to give rise to a crime of violence. If we look at the Lacoste case... I guess that doesn't take into account the fact that Castleman said the type of violence in a domestic context often involves just pushing, shoving, slapping, and does not need to meet the standard of violence in the other context. That's correct, Your Honor. That's correct. I would just submit, in this case, that South Carolina criminal domestic violence, looking at the totality of the case law and how South Carolina has interpreted it, should not be interpreted as a crime of violence. And that based upon how Judge Childs evaluated this situation... There's a picture in here of a woman, what's his wife in here, the black guy? I think fiance, yes, Your Honor. Is that evidence of the conduct in this case? I believe that's actually evidence of the criminal domestic violence in the third degree case, which is a misdemeanor. But in that one, she got a black eye, right? Yes, Your Honor. I think that's the one that gave rise to the grade C violation. So, both of the charges were dismissed. The victim in the case came forward and denied that what law enforcement had reported to Judge Childs was actually what happened. So, yeah. Okay. Thank you, Your Honor. I see that you're court appointed. I am, Your Honor. I want to recognize your service to the court. It's, of course, an important service. It makes our system work. Thank you, Your Honor.  and then we'll come down and greet counsel. Thank you, Your Honor. This honorable court is adjourned. I die to save the United States and this honorable court.
judges: Paul V. Niemeyer, Barbara Milano Keenan, Pamela A. Harris